UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Chapter 7 Bankruptcy |
| Yehud-Monosson USA, Inc. | Bankruptcy No. 11-42834 |
| Debtor. | |

| | |
|---|---|
| NAOMI ISAACSON, | |
| Appellant, | Civil No. 12-449 (JNE) |
| v. | ORDER |
| NAUNI JO MANTY, | |
| Appellee. | |

This matter is before the Court on Naomi Isaacson's appeal from the United States Bankruptcy Court for the District of Minnesota's January 4, 2012 and January 5, 2012 Orders.[1] For the reasons set forth below, the Court affirms the decisions of the bankruptcy court.

## I.    BACKGROUND

On March 23, 2011, an entity called Yehud-Monosson USA, Inc. ("Yehud") filed a Chapter 11 bankruptcy petition in the Southern District of New York.  The case was transferred to the bankruptcy court for the District of Minnesota and was subsequently converted to Chapter 7.  Issues arose during the bankruptcy proceedings related to the turnover of various documents—the Chapter 7 Trustee, Nauni Jo Manty, asserted that certain documents were not turned over; the debtor's representative and president, Naomi Isaacson, contended that she had

---

[1]     This Court sits in review of bankruptcy court decisions pursuant to 28 U.S.C. § 158(a) (2006).

1

turned over all documents in her possession. The trustee filed a motion for turnover with the bankruptcy court on September 14, 2011. United States Bankruptcy Judge Dennis D. O'Brien held a hearing on October 6, 2011 and entered an order granting the motion for turnover on October 7, 2011 ("Turnover Order"). The Turnover Order stated that if Isaacson failed to turnover the books, records, documents and information described in the Order, and the trustee submitted an affidavit identifying the missing material, the court would issue "the appropriate sanctions against Naomi Isaacson for her failure to comply with this court's order, which may include monetary sanctions and/or a finding of contempt punishable by arrest and incarceration."

The trustee believed that Isaacson failed to comply with the Turnover Order and filed an affidavit of non-compliance on October 17, 2011. Judge O'Brien recused himself on October 19, and United States Bankruptcy Judge Nancy C. Dreher took over the case. The trustee then filed a motion for contempt on November 2, 2011. The hearing on the motion for contempt was scheduled for 1:00 p.m. on November 17, 2011—but there was an error in the notice provided to Isaacson, which noticed the hearing at 1:30 p.m. instead of 1:00 p.m. Rebekah Nett, the attorney representing the debtor, appeared at 1:20 p.m. and learned of the mistake. During the hearing, it was also revealed that Isaacson may not have been properly served with the Turnover Order. The court continued the hearing and rescheduled it for December 6, 2011. On November 18, 2011, the bankruptcy court issued an order that continued the hearing on the trustee's contempt motion. The November 18 Order stated that "[a]t the continued hearing, the trustee will be permitted to make a record—one that meets the test for a finding of contempt—that Naomi Isaacson . . . received notice of, or otherwise had knowledge of the court's [Turnover Order]." It also ordered Isaacson to appear in person or by telephone at the continued hearing on December 6 because contempt was sought personally against her, rather than against the debtor. If Isaacson

failed to appear, the Order noted that such failure "may be cause for entry of an order on default."

Isaacson erroneously believed that the November 18 Order already found that she was in contempt for violating the Turnover Order and that she no longer had an opportunity to present her arguments to the court. In response, on November 25 she filed a motion to vacate the November 18 Order. She submitted a memorandum in support of her motion to vacate, signed by attorney Nett and verified by Isaacson. The "factual background" section of the memorandum contained numerous allegations of bigotry, deceit, and conspiracy against Judge Dreher, Judge O'Brien, the Chapter 7 Trustee, the United States Trustee, and bankruptcy courts in general.[2] A hearing was held on the motion to vacate on November 29 and the bankruptcy court denied the motion. At that hearing, Nett admitted that Isaacson had written the inflammatory statements and that she had merely signed off on the memorandum. Nett also acknowledged that she had an obligation to make a reasonable inquiry into the law and facts before signing papers submitted to the court.

The continued contempt hearing was held on December 6, but Isaacson did not appear as ordered. On December 8, the bankruptcy court issued a Contempt Order, finding Isaacson, as the debtor's representative, in civil contempt based upon her failure to comply with the Turnover Order. The Order stated that Isaacson could purge herself of the civil contempt if she provided the trustee with identified documents and information by December 16. A failure to produce the identified information would constitute a continuing contempt of the December 8 Order and of the Turnover Order. The court scheduled a continued hearing for January 4, 2012. The

---

[2]   The Court does not find it helpful or necessary to repeat all of the allegations contained within Isaacson's brief, but a representative sample of such statements includes phrases such as "black-robed bigot," "ignoramus, bigoted Catholic beasts," and "Catholic Knight Witch Hunter."

Contempt Order also found Isaacson, individually, in civil contempt based upon her failure to appear at the December 6 hearing. She could purge herself of the contempt by appearing at the January 4 hearing, at which time she could testify in her own defense. The December 8 Contempt Order also permitted the trustee to file an affidavit of her reasonable costs and attorneys' fees incurred in bringing the motion for contempt. Finally, the order noted that "[i]n light of Naomi Isaacson's continuing contempt for failure to appear before the Court on December 6, 2011, and in anticipation of her continuing to disobey orders of this court, the United States Marshal or any Authorized United States Officer is hereby ordered and directed to bring Naomi Isaacson . . . before this court at a hearing to be held on January 4, 2012." On December 19, the trustee filed an affidavit of non-compliance. In response, on December 29, Isaacson submitted an affidavit stating that she already produced all the records in her possession.[3]

On December 7, the Court, *sua sponte*, issued two Orders to Show Cause related to the November 25 submissions—one directed at attorney Rebekah Nett, and the other at Naomi Isaacson. The Order to Show Cause stated that "[t]o be clear, the court's November 17, 2011 order made absolutely no ruling on the merits of the trustee's motion for contempt"[4] and that the "factual background" section of the memorandum in support of the motion to vacate the November 18 Order "was replete with unsupported and outrageous allegations." It identified ten separate statements contained within the memorandum and ordered Nett and Isaacson to appear at the January 4 hearing to show cause as to why sanctions should not be imposed against them

---

[3]   In that affidavit, Isaacson also repeatedly called the trustee a "Jesuitess" and alleged that Judge Dreher, the U.S. Trustee, and the Chapter 7 Trustee held a secret hearing and had secret discussions.

[4]   The bankruptcy judge dated the order November 17, 2011, but it was filed and docketed on November 18, 2011.

pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure.[5] The Orders stated that possible sanctions may include, among other things, a monetary sanction of $1,000 per factually unsupported statement, payable within ten days of any sanction order.

In response to the Order to Show Cause, Isaacson submitted a written response which again alleged that the bankruptcy judge held a secret hearing with the trustee and clarified that "[i]n referring to Nancy Dreher as being a 'Catholic judge,' it is not referring to being a member of the Roman Catholic Church," but rather "is referring to a mentality and an adherence to a universal creed of White Supremacy." Isaacson continued to assert that the bankruptcy judge adhered to such a mentality of white supremacy, engaged in a conspiracy with the trustees, was bigoted and prejudiced, and that every statement in the November 25 submission was true.[6] Isaacson made no arguments regarding the threatened sanctions or any inability to pay the possible $10,000 sanction.

---

[5] Federal Rule of Bankruptcy Procedure 9011(b) provides:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
>    (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; . . .
>    (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Bankr. P. 9011(b). Rule 9011 also provides that on "its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney . . . or party to show cause why it has not violated subdivision (b) with respect thereto." Fed. R. Bankr. P. 9011(c)(1)(B).

[6] Isaacson made further allegations regarding the bankruptcy judge's husband, and stated, among other things, that the judge was "no innocent gavel-holder."

On January 3, 2012, the bankruptcy judge issued an arrest warrant for Isaacson based upon her failure to comply with the December 8 Contempt Order. On January 4, the bankruptcy court held a hearing relating to both the December 8 Contempt Order and the December 7 Orders to Show Cause. Isaacson again failed to appear. Based on the unsupported "factual" statements in the November 25 submissions, and because Isaacson continued to make inflammatory and unsubstantiated statements in response to the Order to Show Cause, the bankruptcy judge held that Isaacson violated Federal Rule of Bankruptcy Procedure 9011(b)(1) and (3) and imposed monetary sanctions of $500 per statement—totaling $5,000.[7] This Order for Sanctions is one of the orders currently before this Court on appeal.[8]

On January 5, 2012, the bankruptcy court issued a Continuing Contempt Order, in which it found Isaacson, as the debtor's representative, was in continuing civil contempt based upon her failure to produce certain documents and information. She was given until January 13 to purge herself of the civil contempt by delivering to the trustee the identified materials. If she did not comply with the order, then the trustee could file an affidavit of non-compliance, and such failure to comply would constitute a continuing contempt of the January 5 Continuing Contempt Order, the bankruptcy court's December 8 Contempt Order, the court's November 18 Order, and the October 7 Turnover Order. If the trustee filed an affidavit of non-compliance, the court would schedule a further, continued hearing, based in part upon the progress of the U.S. Marshal in apprehending Isaacson pursuant the court's January 3 bench warrant. The Continuing

---

[7] The Order for Sanctions also enjoined Isaacson from filing future documents referring to the religious beliefs of the court, parties, or attorneys and from using certain disparaging and inflammatory words or phrases.

[8] The court imposed the same monetary sanctions upon attorney Nett, along with additional sanctions. Nett also appealed from the Order for Sanctions against her, which this Court addresses in a separate order. *Nett v. Manty*, Civil No. 12-449 (JNE).

Contempt Order imposed no sanctions. Isaacson appeals from this January 5 Continuing Contempt Order.[9]

## II. DISCUSSION

### A. Order for Sanctions Against Naomi Isaacson

Isaacson appeals the bankruptcy court's January 4 Order for Sanctions, which found that Isaacson violated Rule 9011 of the Federal Rules of Bankruptcy Procedure and imposed upon her a monetary penalty of $5,000—or $500 for each of the ten statements identified in the Order to Show Cause. Isaacson contends that the bankruptcy court erred in finding that Isaacson violated Rule 9011 and imposing sanctions. We review the imposition of monetary sanctions under Rule 9011 for an abuse of discretion.[10] *Schwartz v. Kujawa (In re Kujawa)*, 270 F.3d 578, 581 (8th Cir. 2001).

---

[9] On February 9, 2012, the bankruptcy court also ordered that the trustee be awarded her reasonable attorneys' fees and costs related to the motion for contempt in the amount of $10,322.99 against Isaacson. Isaacson did not appeal from this order, nor did she appeal from the December 8, 2011 Contempt Order, which permitted the trustee to file an affidavit of her reasonable costs and fees.

[10] "The language of Rule 9011 closely tracks the language of [Rule 11 of the Federal Rules of Civil Procedure] and law interpreting Rule 11 is applicable to Rule 9011 cases." *Grunewaldt v. Mut. Life Ins. Co. of N.Y. (In re Coones Ranch, Inc.)*, 7 F.3d 740, 743 (8th Cir. 1993).

It is unclear whether an Order for Sanctions under Rule 11 (or Rule 9011) is an immediately appealable "final order" under 28 U.S.C. § 158(a)(1). *Compare Crookham v. Crookham*, 914 F.2d 1027, 1029 n.4 (8th Cir. 1990) (noting that "Rule 11 sanctions . . . are immediately appealable as a final decision under § 1291, and under the [] collateral order doctrine" (citations omitted)), *with Dieser v. Cont'l Cas. Co.*, 440 F.3d 920, 924 (8th Cir. 2006) (describing Rule 11 sanctions as "clearly interlocutory" and stating that "a 'belief that such a decision is a final judgment would *not* be reasonable'" (quoting *FirsTier Mortg. Co. v. Investors Mortg. Ins. Co.,* 498 U.S. 269, 276 (1991))). The United States Supreme Court in *Cunningham v. Hamilton County, Ohio*, 527 U.S. 198, 204 (1999), held that Rule 37 sanctions are not "final orders" and are also not immediately appealable under the collateral order doctrine. Although the Eighth Circuit has not addressed the effect of *Cunningham* on Rule 11 sanctions, other circuit courts have held that *Cunningham* applies to Rule 11 sanctions, and that such sanctions are not immediately appealable as collateral orders. *See, e.g., Klestadt & Winters, LLP v. Cangelosi*,

7

Isaacson contends that the bankruptcy court abused its discretion in two ways. First, Isaacson believes that because of the offensive statements in the November 25 submissions, Judge Dreher became too "personally embroiled" in the matter and should not have presided over the show cause hearing nor issued the sanctions order. Thus, Isaacson argues, due process required that another judge adjudicate the Rule 9011 issue. Second, Isaacson contends that the bankruptcy court erred because the sanction amount was not limited to the amount necessary to deter such violative conduct. Each of these arguments will be addressed in turn.

*1. Due Process*

Isaacson asserts that it was improper for Judge Dreher to adjudicate the Rule 9011 issue because she had become so "personally embroiled" in the matter and had taken "great personal offense" at the statements made in the November 25 submissions. Appellant's Br. 31, 32. Isaacson contends that because the Rule 9011 sanction was designed to punish, and was payable directly to the court, it is akin to a criminal contempt sanction and requires the same due process considerations as criminal contempt proceedings. *See, e.g.*, *Hicks v. Feiock*, 485 U.S. 624, 632 (1988) (explaining that the purpose of civil contempt is remedial, whereas the purpose of criminal contempt is punitive—and if the sanction for contempt is a fine payable to the court, it

---

672 F.3d 809, 819 (9th Cir. 2012) (holding that sanctions orders under Rule 9011 are not appealable collateral orders); *Comuso v. Nat'l R.R. Passenger Corp.*, 267 F.3d 331, 339 (3d Cir. 2001) (stating that the Supreme Court in *Cunningham* "rejected a case-by-case approach in deciding whether an order was separate from the merits of the litigation in favor of a *per se* rule that sanctions orders are inextricably intertwined with the merits," and applying *Cunningham* to other types of sanctions); *Williams v. Midwest Emp'rs Cas. Co.*, 243 F.3d 208, 210 (5th Cir. 2001) (finding that Rule 11 sanctions are neither appealable final decisions nor appealable collateral orders).

The Court nevertheless has the authority to review non-final decisions of bankruptcy judges. 28 U.S.C. § 158(a)(3). Because of the unsettled law surrounding the immediate appealability of Rule 11 sanctions, and because the issues raised in this appeal are sufficiently separate from those at issue in the bankruptcy proceedings, the Court will consider the merits of the appeal of the sanctions order.

is punitive and thus constitutes a criminal penalty and requires constitutional protections). In the context of criminal contempt cases, the United States Supreme Court has held that when a judge "has become so 'personally embroiled' with a lawyer in the trial as to make the judge unfit to sit in judgment on the contempt charge," the judge must recuse himself in order to "satisfy the appearance of justice." *Mayberry v. Pennsylvania*, 400 U.S. 455, 465 (1971) (quoting *Offutt v. United States*, 348 U.S. 11 (1954)). Isaacson relies upon these criminal contempt cases in arguing that a judge who has been personally offended by a litigant must recuse himself in order to comport with due process. *See, e.g.*, *Taylor v. Hayes*, 418 U.S. 488 (1974); *Cooke v. United States*, 267 U.S. 517 (1925).

Essentially, Isaacson asks this Court to equate Rule 9011 sanctions with criminal contempt sanctions. But she cites no authority to support her request, and, in fact, Rule 9011 (or Rule 11) sanctions are not the same as contempt sanctions and do not require the same procedures. *See, e.g.*, *Donaldson v. Clark*, 819 F.2d 1551, 1558-59 (11th Cir. 1987) ("Nothing in the text of Rule 11 or in the Advisory Committee Note indicates that due process requires a court to follow the procedures called for by Fed. R. Crim. P. 42(b) for criminal contempt proceedings before it can impose a monetary sanction pursuant to Rule 11. Both the note and policy considerations tend to the opposite conclusion. . . . A violation of Rule 11 is fundamentally different from an infraction of criminal contempt and therefore warrants different sanction proceedings."); *Miller v. Cardinale (In re DeVille)*, 361 F.3d 539, 552 (9th Cir. 2004) (rejecting the necessity of criminal contempt protections in Rule 11 proceedings); *Eisenberg v. Univ. of N.M.*, 936 F.2d 1131, 1137 (10th Cir. 1991) (finding that Rule 11 sanctions do not require the procedures called for by Rule 42(b) of the Federal Rules of Criminal Procedure);

*Wayland v. McVay (In re TByrd Enters.), LLC*, 354 F. App'x 837, 839 (5th Cir. 2009) (stating that "there is no legal basis for equating" Rule 9011 sanctions and criminal contempt sanctions).

Rule 9011 specifically provides for sanctions after "notice and a reasonable opportunity to respond." Fed. R. Bankr. P. 9011(c). Sanctions may include "an order to pay a penalty into court." Fed. R. Bankr. P. 9011(c)(2). When the court initiates Rule 9011 sanctions on its own initiative, it must first issue an order to show cause, describing the specific conduct that appears to violate the rule. Fed. R. Bankr. P. 9011(c)(1)(B), (c)(2)(B). The bankruptcy court issued an Order to Show Cause, which clearly identified ten statements that appeared to violate Rule 9011, and Isaacson had an opportunity to respond—both in writing and at the January 4 hearing. Thus, she was afforded all the process Rule 9011 requires.

To the extent that Isaacson attempts to claim that the bankruptcy judge abused her discretion by failing to recuse herself, *sua sponte*, the Court also finds the argument to be without merit. First, she cites no statutory authority, such as 28 U.S.C. § 455, as the basis for such a claim.[11] Even if the Court construes Isaacson's argument as a failure to recuse claim, she never filed a motion to recuse, nor did she raise this issue before the bankruptcy court. Where a failure to recuse claim is first raised on appeal, the court reviews for plain error, rather than abuse of discretion. *See Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 663 (8th Cir. 2003). "To prove plain error the defendant must show that '(1) the district court committed an error, (2) the error is clear or obvious, and (3) the error affected his substantial rights.'" *United States v. Jean-Guerrier*, 666 F.3d 1087, 1091 (8th Cir. 2012) (citation omitted). "An error affects a substantial

---

[11] "Subsection 455(a) requires a United States judge to 'disqualify himself in any proceeding in which his impartiality might reasonably be questioned.'" *In re Kan. Pub. Emps. Retirement Sys.*, 85 F.3d 1353, 1358 (8th Cir. 1996) (quoting 28 U.S.C. § 455(a)). Subsection 455(b) requires a judge to recuse himself "[w]here he has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1).

right if it is prejudicial." *United States v. Woods*, 670 F.3d 883, 888 (8th Cir. 2012) (internal quotation marks omitted). "Even if the defendant meets these three requirements of plain error, an appellate court will only reverse if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Jean-Guerrier*, 666 F.3d at 1091. "A party introducing a motion to recuse carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise." *Fletcher*, 323 F.3d at 664 (internal quotation marks omitted).

"[R]ecusal is not necessarily required even after a district court has expressed 'impatience, dissatisfaction, annoyance, and even anger' toward a party." *United States v. Rubashkin*, 655 F.3d 849, 858 (8th Cir. 2011) (citing *United States v. Sypolt*, 346 F.3d 838, 839 (8th Cir. 2003)); *see also Liteky v. United States*, 510 U.S. 540, 555-56 (1994) ("*Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune."). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555. "Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.*

Moreover, a party cannot force a judge to recuse him or herself merely by launching inflammatory personal attacks on the judge and then claiming that the attacks were so offensive

that the judge must be biased. "To hold otherwise would encourage inappropriate 'judge shopping.'" *United States v. Owens*, 902 F.2d 1154, 1156 (4th Cir. 1990); *United States v. Edwards*, 39 F. Supp. 2d 692, 711-12 (M.D. La. 1999) ("A party cannot force disqualification by attacking the judge and then claiming that these attacks must have caused the judge to be biased against them." (internal quotation marks omitted)). "[T]he disqualification decision must reflect *not only* the need to secure public confidence through proceedings that appear impartial, *but also* the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking." *In re Allied-Signal Inc.*, 891 F.2d 967, 970 (1st Cir. 1989) (emphasis in original). For that reason, a number of courts have held that "[p]arties cannot be allowed to create the basis for recusal by their own deliberate actions." *Owens*, 902 F.2d at 1156 ("To hold otherwise . . . would invite litigants to test the waters with a particular judge and then to take steps to create recusal grounds if the waters proved uncomfortably hot."); *United States v. Bray*, 546 F.2d 851, 858 (10th Cir. 1976) (explaining that "[p]rior written attacks upon a judge are [] legally insufficient to support a charge of bias or prejudice on the part of a judge toward an author" and that "[t]o allow prior derogatory remarks about a judge to cause the latter's compulsory recusal would enable any defendant to cause the recusal of any judge merely by making disparaging statements about him"); *In re Union Leader Corp.*, 292 F.2d 381, 389 (1st Cir. 1961) (stating that "[a] judge lives in an atmosphere of strife, in which, by nature and experience, he is expected to be a man of 'fortitude,'" and finding that the judge, who had been personally attacked in editorials published by the petitioner, was not required to recuse himself).

Further, "[a] recusal motion must be 'timely made,'" meaning that a party must "raise a claim 'at the earliest possible moment after obtaining knowledge of facts demonstrating the basis

for such a claim.'" *Rubashkin*, 655 F.3d at 858 (citations omitted). A failure to do so "can result in waiving or forfeiting judicial review." *Fletcher*, 323 F.3d at 664. Isaacson alleged judicial bias in her November 25 submissions. The facts forming the basis for her claim were established by November 18, when the bankruptcy court issued the order continuing the contempt hearing. But Isaacson did not file a motion to recuse at that time. Isaacson was also aware of any additional alleged bias or prejudice resulting from the inflammatory language used in the November 25 submissions at the time she filed those papers. At the very latest, she was aware of the bankruptcy judge's opinions concerning those submissions by the November 29 hearing, at which time the bankruptcy judge described the language used as "irresponsible, unprofessional, and unbelievably and unmitigatingly outrageous," and the corresponding motion to vacate as "frivolous" and "inflammatory." Isaacson did not file a motion to recuse or raise the issue of recusal at the November 29, December 6, or January 4 hearings. "[M]otions to recuse should not 'be viewed as an additional arrow in the quiver of advocates in the face of [] adverse rulings." *In re Kan. Pub. Emps. Ret. Sys.*, 85 F.3d 1353, 1358 (8th Cir. 1996) (citation omitted). Isaacson's argument regarding recusal is not timely.

The Court finds that the bankruptcy judge did not commit a clear or obvious error in failing to recuse herself *sua sponte*. The Eighth Circuit "ha[s] never found that a district court plainly erred in this manner," and is very "reluctant to do so." *Rubashkin*, 655 F.3d at 858 (citing *Sypolt,* 346 F.3d at 839). Isaacson points to no evidence of bias or prejudice against her—at most, she has shown that the bankruptcy judge was angry about the unsubstantiated "factual" allegations, but even expressions of anger are permissible. *See Liteky*, 510 U.S. at 555-56. Here, there is no evidence of "deep-seated favoritism or antagonism" on the part of the bankruptcy judge. Rather, Isaacson relies on her own written submissions to support her

argument of judicial bias. The November 18 Order continuing the contempt hearing and the December 8 and January 5 contempt orders illustrate no such bias or prejudice, *see Fletcher*, 323 F.3d 665 ("An adverse ruling does not constitute a sufficient basis for disqualification without a clear showing of bias or partiality."), nor does the issuance of the bench warrant demonstrate bias, given Isaacson's failure to appear at the December 6 hearing despite a court order to do so. Isaacson was given multiple opportunities to present evidence and purge herself of the contempt, and the record contains no evidence supporting an allegation of bias or prejudice on the part of the bankruptcy judge.

Moreover, even if the bankruptcy judge did err, there is no indication that the error affected Isaacson's substantial rights—Isaacson has failed to show that she was prejudiced by the alleged error. She offers no reason to believe that any other judge would have reached a different decision regarding the propriety of Rule 9011 sanctions based on the statements in the November 25 submissions. Thus, absent evidence of bias and prejudice resulting from such bias, and given the untimeliness of Isaacson's current argument regarding disqualification, the Court finds that the bankruptcy court did not plainly err in not recusing itself *sua sponte*.

*2. Amount of Sanction*

The purpose of Rule 9011 is "to deter baseless filings and . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). "Rule 9011 explicitly states that '[a] sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.'" *Schwartz v. Kujawa (In re Kujawa)*, 270 F.3d 578, 583 (8th Cir. 2001) (quoting Fed. R. Bankr. P. 9011(c)(2). Isaacson argues that the bankruptcy court erred because the $5,000 sanction was not an amount limited to what is necessary to deter future

14

violative conduct. She argues that the bankruptcy court failed to consider her ability to pay and also failed to make detailed findings as to why the $5,000 monetary sanction was limited to the amount necessary to deter conduct under Rule 9011(c)(2).

Although one factor a court imposing sanctions should consider is the sanctioned party's ability to pay, there is no abuse of discretion in failing to consider this factor when it was not raised before the sanctioning court. Isaacson had the obligation to raise her inability to pay before the bankruptcy court, and she did not do so. *See Landscape Props., Inc. v. Whisenhunt*, 127 F.3d 678, 685 (8th Cir. 1997) ("Nothing in the record indicates, or even suggests, however, that [appellant] is unable to pay the amounts. If that were the situation, it was [appellant's] obligation to raise that point before the district court, since he was the one who had that information."); *see also Willhite v. Collins*, 459 F.3d 866, 870 (8th Cir. 2006) (stating that it was the sanctioned party's obligation to raise his inability to pay before the lower court); *White v. Gen. Motors Corp.*, 908 F.2d 675, 685 (10th Cir.1990) ("Inability to pay what the court would otherwise regard as an appropriate sanction should be treated as reasonably akin to an affirmative defense, with the burden upon the parties being sanctioned to come forward with evidence of their financial status."); *Multiservice Joint Venture, LLC v. United States*, 374 F. App'x 963, 967 (Fed. Cir. 2010) (finding that the sanctioned party waived her inability to pay argument by not raising it as a defense at the time she was sanctioned). Isaacson was given two opportunities to raise her inability to pay—first, in her written response to the Order to Show Cause, and again at the January 4 hearing, at which she failed to appear. It was her burden to come forward with allegations of inability to pay and evidence supporting those allegations—she has come forward with neither. Even now she does not allege that she is unable to pay the sanction. Thus, the

bankruptcy court did not abuse its discretion in not considering Isaacson's ability to pay the monetary sanction.

Isaacson next contends that the bankruptcy court did not explain how $5,000—or $500 per identified statement—was "limited to what is sufficient to deter." She argues that the bankruptcy court did not explain why it imposed the monetary penalty and did not make any detailed findings as to how the statements in the November 25 submissions demonstrated disregard for the judicial process or bad faith. Instead, she asserts that the objectionable statements were merely a "venting of a frustration on Appellant's part." Appellant's Br. 37. Court filings are not the proper place to vent frustration. Given the blatant impropriety of the language Isaacson used in her submissions and her failure to provide factual support for them in her subsequent response, this Court need not expound on how Isaacson's unsubstantiated and inflammatory statements regarding the bankruptcy judge and other parties in the bankruptcy proceedings constituted disregard for the judicial process, bad faith, and harassment. Upon reviewing the record, the bankruptcy judge was abundantly clear as to why she imposed the monetary sanction.

Although the bankruptcy court could have more thoroughly explained its rationale for setting the amount of the sanction, the Court nevertheless finds that there was no abuse of discretion. In the Order to Show Cause, the bankruptcy court suggested that it might impose sanctions of up to $10,000 based upon the inflammatory and unsubstantiated statements in the November 25 submissions. Despite this threat, Isaacson responded by making even more inflammatory and unsubstantiated statements about the judiciary and other parties in the bankruptcy litigation—going so far as to explain that what she really meant by "catholic" was "white supremacist," as if that clarification somehow made the statements more factually

16

supported or less harassing. If a threat of a monetary sanction of $10,000 was not enough to deter repetitive conduct, then a monetary sanction of $5,000 could not have been more than sufficient to deter repetition of such conduct. "Although it would have been better if the [bankruptcy] court had discussed this issue, the total context of the court's ruling indicates that the court believed that the sanctions it imposed were necessary to deter repetition . . . ." *Landscape Props.*, 127 F.3d at 685. Thus, the bankruptcy judge did not abuse her discretion in finding that Isaacson violated Rule 9011 and imposing sanctions of $500 per statement.

In conclusion, the bankruptcy judge did not abuse her discretion in presiding over the show cause hearing, finding that the ten identified statements were factually unsupported and designed to harass, and imposing a monetary sanction of $500 per statement. The Order for Sanctions is affirmed.

**B. Order Granting Motion for Contempt**

Isaacson appeals from the bankruptcy court's January 5 Continuing Contempt Order. In that Order, the bankruptcy court found Isaacson, as the debtor's representative, in continuing civil contempt based upon her failure to produce documents and information pursuant to the October 7 Turnover Order and December 8 Contempt Order. The Continuing Contempt Order did not impose any sanctions, but allowed for a continued hearing if the trustee filed an affidavit of non-compliance after January 13.

The Court has authority to hear appeals from final orders. 28 U.S.C. § 158(a)(1). The Court also has discretion to hear appeals from interlocutory bankruptcy court orders. *Id.* § 158(a)(3); *In re M & S Grading, Inc.*, 526 F.3d 363, 368 (8th Cir. 2008). "To determine the finality of a bankruptcy court order we consider 'the extent to which (1) the order leaves the bankruptcy court nothing to do but execute the order; (2) the extent to which delay in obtaining

review would prevent the aggrieved party from obtaining effective relief; (3) the extent to which a later reversal on [the contested] issue would require recommencement of the entire proceeding.'" *In re M & S Grading*, 526 F.3d at 368 (citation omitted). "Although this standard is more flexible than in nonbankruptcy contexts, an order entered before the conclusion of a bankruptcy case is not subject to review [as a "final order"] unless it finally resolves a discrete segment of the underlying proceeding." *Id.*

The Court finds that the January 5 Continuing Contempt Order is not a "final order" because it only contained a finding of contempt without the imposition of a sanction. *See Bernard v. Am. Cyanamid Co. (In re Tetracycline Cases)*, 927 F.2d 411, 413 (8th Cir. 1991) (finding that a contempt order is not a "final order" when it does not include the amount of the sanction, stating that such an "order is not final because it lacks 'consequence.'" (citation omitted)); *SEC v. Naftalin*, 460 F.2d 471, 475 (8th Cir. 1972) (holding that a contempt order is not "final" where it "merely makes an adjudication that a contempt has been committed" but imposes "[n]o sentence or sanction . . . for the contempt"). The Continuing Contempt Order merely found Isaacson in contempt, but did not impose a sanction—instead, if the trustee filed an affidavit of non-compliance, the court would schedule a further, continued hearing on the matter. "Until a sentence or sanction has been made to exist as to a contempt adjudication, the situation is lacking in the elements of operativeness and consequence necessary to be possessed by any judicial order to enable it to have the status of a final decision . . . ." *Naftalin*, 460 F.2d at 475.[12]

---

[12]    Moreover, even if the Continuing Contempt Order did impose a sanction, it would likely still have constituted a nonappealable interlocutory order. A civil contempt order imposed during the course of a pending action is not immediately appealable when the contemnor is a party to the pending action. *Naftalin*, 460 F.2d at 475; *Omaha Indem. Co. v. Wining*, 949 F.2d 235, 238 (8th Cir. 1991) ("Interlocutory civil contempt orders are not appealable by a party.").

18

Where a bankruptcy order is not a final order, the district court may nevertheless grant leave for an interlocutory appeal. 28 U.S.C. § 158(a)(3). The Court may construe the notice of appeal as a motion for leave to appeal. Fed. R. Bankr. P. 8003(c). "The decision to deny leave to appeal an interlocutory bankruptcy order is purely discretionary." *In re M & S Grading*, 526 F.3d at 371. "In deciding whether to grant a motion for leave to appeal, we typically apply the standards found in 28 U.S.C. § 1292(b) which define the jurisdiction of courts of appeal to review interlocutory orders." *Gen. Elec. Capital Corp. v. Mach., Inc. (In re Mach., Inc.)*, 275 B.R. 303, 306 (B.A.P. 8th Cir. 2002). "Section 1292(b) requires that: (1) the question involved be one of law; (2) the question be controlling; (3) there exists a substantial ground for difference of opinion respecting the correctness of the [bankruptcy] court's decision; and (4) a finding that an immediate appeal would materially advance the ultimate termination of the litigation." *Id.* (citing 28 U.S.C. § 1292(b)). "Review under § 1292(b) should be sparingly granted and then only in exceptional cases." *Id.* (internal quotation marks omitted).

Here, there is no controlling question of law as to which there is substantial ground for difference of opinion. The finding of civil contempt in this case related to the turnover, or lack thereof, of materials specified in the October 7 Turnover Order and December 8 Contempt Order, along with Isaacson's failure to appear at the hearing as previously ordered. Further, nothing in the record suggests that an immediate appeal from the Continuing Contempt Order "would materially advance the ultimate termination of the litigation." Thus, the Court declines to exercise its discretion to hear this interlocutory appeal. The notice of appeal, which the court construes as a motion for leave to appeal the Continuing Contempt Order, is denied.[13]

---

[13] Isaacson also asserts that the bankruptcy court abused its discretion in issuing a bench warrant for her arrest on January 3. The issuance of the bench warrant, however, was not part of the January 5 Continuing Contempt Order nor was it included in the Order for Sanctions—the

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. The bankruptcy court's Order for Sanctions as to Naomi Isaacson is AFFIRMED.

2. Appellant's motion for leave to appeal the Continuing Contempt Order is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: May 11, 2012

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge

---

two orders from which Isaacson appeals. Isaacson never filed a motion to quash the bench warrant, nor does she allege any constitutional violations or even that she was actually arrested. Rather, her primary argument appears to be that the matter should have been referred to another bankruptcy judge, based upon Judge Dreher's alleged bias and failure to recuse herself. But as previously discussed, the Court finds no plain error in the bankruptcy judge's failure to recuse herself *sua sponte*.

Additionally, Isaacson argues that the bankruptcy court erred in directing her to pay the Chapter 7 Trustee's attorneys' fees in the amount of $10,322.99. But Isaacson did not appeal the bankruptcy court's December 8 Contempt order, which permitted the trustee to file an affidavit of her reasonable costs and fees, nor did she appeal the February 9 order awarding attorneys' fees and costs. Thus, this Court lacks jurisdiction to consider the issue of attorneys' fees. Fed. R. Bankr. P. 8002(a); *Farmpro Servs., Inc. v. Brown (In re Brown)*, 273 B.R. 194, 197 (B.A.P. 8th Cir. 2002) (finding that the court lacked jurisdiction where a timely appeal was not made).